**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| PATRICK J. SHELOW | : | NO. 10-0037 |

**MEMORANDUM RE: MOTION IN LIMINE**
**TO ADMIT EVIDENCE UNDER FED. R. EVID. 404(B)**

Baylson, J.                                                                    December 8, 2011

**I.      Introduction**

        Presently before the Court is the Government's Motion in Limine to Admit Evidence

Under Federal Rule of Evidence 404(b), filed on December 8, 2010 (ECF No. 26), and

Defendant Patrick Shelow's response thereto (ECF No. 30).  On January 21, 2010, a grand jury

indicted Defendant on five counts of wire fraud relating to his scheme to defraud married victims

T.A. and L.A. ("the victims"), based on conduct between 2005 and the date of the indictment.  In

advance of the trial, the Government has moved to introduce evidence concerning the

Defendant's relationship with the victims beginning in the 1990s, prior to the activities charged

in the indictment.  The Government also seeks to introduce evidence of Defendant's distressed

financial condition during the period of time in which the acts in the indictment allegedly

occurred.

        The Government offers two alternative theories for admission.  First, the Government

argues that the evidence is "intrinsic" to the charged crime, and excluded from the scope of Rule

404(b).  Second, the Government contends that the evidence is probative of the exceptions under

Rule 404(b).  The Court rejects the Government's theory that the evidence is intrinsic to the

offense of wire fraud.  However, the Court will grant the Government's Motion in Limine

because the evidence is not to be admitted to show propensity, but rather is permissible under

Rule 404(b) to show the Defendant's intent, motive, opportunity, and knowledge.

## II.     Background[1]

### A.       The Charged Conduct

The indictment charges that Defendant conducted a fraudulent scheme to obtain

approximately $1.2 million from the victims between December 2005 and December 2007 to

finance an oil-drilling project in Ecuador.  In the first phase of the scheme, Defendant allegedly

solicited approximately $845,000 from the victims by selling them stock in a company that was

allegedly carrying out the drilling, and by charging them for their share of costs associated with

the project.  In the second phase of the scheme, Defendant allegedly solicited $350,000 from the

victims based on fraudulent representations that he needed the money to buy out another investor

in the project and that the loan was critical to the success of the project.  In both instances, the

victims sent funds by interstate wire transfer into a bank account registered to St. Joe Trading

Company, which Defendant owns and solely controls.  Defendant did not invest the victims'

funds into the Ecuadorian oil-drilling project, which was a fabrication.  Rather, Defendant used

the victims' funds to finance his personal expenses.

### B.       The Contested 404(b) Evidence

The Government seeks to admit two categories of evidence in this Motion in Limine.

---

[1] All facts are taken from the Government's Motion in Limine.  The Defendant does not
dispute these facts in his response to the motion.

One category concerns the relationship between Defendant and the victims, which began in the mid-1990s.  At their initial meeting, Defendant told the victims he was president of a petroleum trading company.  Soon after, the victims began investing money in various projects promoted by Defendant as investment opportunities through which the victims believed they would earn profits.  The victims invested more than one million dollars in seven projects promoted by Defendant, not including the Ecuadorian oil-drilling project charged in the indictment, and never received any money back on their investments.

The other category of evidence that the Government moves to admit pertains to Defendant's financial distress during the period of the alleged fraud.  Defendant represented to the victims that he was a successful oil trader and businessman to the victims, when his only income in 2005 and 2006 was "pass-through" income from his business, St. Joe's Trading, into which the victims transferred their investments.  Defendant owed a substantial amount of money in back taxes to the Internal Revenue Service ("IRS").  The IRS placed a lien on Defendant's house in Florida, which was facing foreclosure because of the significant sum Defendant owed on the mortgage, and Defendant was also building a million dollar home in North Carolina. After Defendant received the $350,000 loan from the victims, he paid the IRS the $100,000 he owed in back taxes.

## III.    The Parties' Contentions

The Government moves to admit the above evidence either as intrinsic evidence or permissible evidence under Rule 404(b).  First, the Government argues that evidence of the Defendant's pre-2005 relationship with the victims is intrinsic to the wire fraud because it will show how the Defendant solicited investments from the victims for numerous projects over the

course of a decade, which facilitated the commission of the charged fraud.  Evidence of

Defendant's financial condition is intrinsic, to prove that Defendant had the intent to defraud the

victims, which is an element of wire fraud.

Alternatively, if the evidence is not intrinsic, the Government contends that it is

admissible for a proper purpose under Rule 404(b).  The long period over which Defendant

established a relationship with the victims shows background for the charged crime, and

Defendant's financial troubles are probative of his motive to commit the fraud.  The Government

contends that limiting instructions can cure any unfair prejudice to Defendant.

Defendant responds that the evidence the Government moves to admit is not admissible

because it serves no proper evidentiary purpose, is not relevant, its probative value is

substantially outweighed by its prejudicial effect, and its prejudicial effect cannot be ameliorated

by limiting instructions.

**IV.     Discussion**

Under Federal Rules of Evidence 404(b), parties may not introduce "evidence of extrinsic

acts that might adversely reflect on the actor's character, unless that evidence bears upon a

relevant issue in the case such as motive, opportunity, or knowledge."  Huddleston v. United

States, 485 U.S. 681, 686 (1988).   Although "other act" evidence is inadmissible to prove action

in conformity therewith, such evidence is admissible if it is "probative of a material issue other

than character."  Id.  Rule 404(b) "does not apply to evidence of uncharged offenses committed

by a defendant when those acts are intrinsic to the proof of the charged offense."  United States v.

Gibbs, 190 F.3d 188, 217 (3d Cir. 1999).  To be admissible, "other act" evidence must be

intrinsic or probative of a material issue other than character.

4

A.      **Intrinsic Evidence**

Rule 404(b) does not apply "to evidence of acts which are 'intrinsic' to the offense

charged." Fed. R. Evid. 404(b) advisory committee's note to 1991 amendments. The Third

Circuit recently rejected the definition of "intrinsic evidence," common in other circuits, as

evidence that is "inextricably intertwined" with the charged offense. United States v. Green, 617

F.3d 233, 248 (3d Cir. 2010), cert. denied, 131 S. Ct. 363 (2010).[2] In Green, the Third Circuit

held that the "intrinsic" label applies only to "two narrow categories of evidence." Id. at 248.

The first category is evidence of uncharged acts that "directly proves" the charged offense. Id. at

248 (citing Gibbs, 190 F.3d at 218). The second category is evidence of "'uncharged acts

performed contemporaneously with the charged crime'" that "'facilitate the commission of the

charged crime.'" Id. at 249 (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir.

2000)). For example, in a hypothetical case where the defendant is charged with the sale of

contraband, the defendant's necessary possession of that contraband would be a facilitating act.

See Bowie, 232 F.3d at 929 (citing 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal

Practice and Procedure § 5239, at 446-47 (1978)). Evidence of other acts outside of these two

---

[2] The Third Circuit has distinguished its definition of intrinsic evidence from "most courts of appeals," which "hold that acts are 'intrinsic' to the charged offense if they are 'inextricably intertwined' with that offense." Green, 617 F.3d at 245. Before renouncing the "inextricably intertwined" test in Green, the Third Circuit critiqued the definitions of intrinsic evidence as either "'inextricably intertwined' with the charged offense" or "complet[ing] the story' of the charged offense" as too narrow and too broad, respectively. See, e.g., United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002) (quoting Bowie, 282 F.3d at 927-29). However, the Green Court noted that "it is unlikely that our holding will exclude much, if any, evidence that is currently admissible as background or 'completes the story' evidence under the inextricably intertwined test." Green, 617 F.3d at 249.

narrow categories is extrinsic.  See Green, 617 F.3d at 249-50 (holding that evidence that the defendant threatened to kill someone was not intrinsic to the charged crime of attempted possession with intent to distribute cocaine, because it neither directly proved the charged offense nor facilitated its commission).

In this case, Defendant has been charged with wire fraud under 18 U.S.C. § 1343.  To prove that Defendant committed wire fraud, "'the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme.'"  United States v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004) (quoting United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001)).  Thus, intrinsic evidence admitted in this case must be either directly probative of one of these elements of wire fraud or of an uncharged contemporaneous act that facilitates the commission of wire fraud.

Neither category of evidence that the Government moves to admit in this motion constitutes intrinsic evidence of wire fraud.  First, evidence that the Defendant had solicited investments from the victims for more than a decade could not directly prove that the Defendant intended to defraud them, that he knowingly and willfully participated in a scheme to defraud, or that he used communications by wire to commit fraud.  Nor could the evidence of Defendant's longstanding relationship with the victims prove a contemporaneous uncharged act that facilitated the fraud, analogous to the possession-sale example.  The longstanding relationship may have "facilitated" the fraud in a colloquial sense, in that the victims believed they could trust Defendant when participating in the investments he proposed.  However, this would fall into the specific exception for opportunity evidence under Rule 404(b), and will be discussed below.

6

Second, evidence that Defendant was experiencing financial distress during the period in which he allegedly defrauded the victims similarly is not probative of any element of wire fraud, nor was it a necessary precondition to facilitate the charged wire fraud. The Government cited no cases in support of its argument that either the prior relationship between Defendant and the victims or Defendant's financial status is intrinsic evidence, nor has this Court found any. The Court concludes that the evidence is not intrinsic, and therefore must be admissible, if at all, for a proper purpose under Rule 404(b).

### B.     Federal Rule of Evidence 404(b)

Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . .." Fed. R. Evid. 404(b). As a precondition to admission, the prosecution in a criminal case must provide notice to the accused of the evidence to be admitted under this rule. Id.[3]

The Third Circuit takes an "inclusionary" approach to evidence under Rule 404(b). United States v. Long, 574 F.2d 761, 765-66 (3d Cir. 1978) (tracing history of Third Circuit's policy on admission of character evidence beginning prior to passage of Fed. R. Evid. 404).

---

[3] In Green, the Third Circuit explained that because both intrinsic evidence and Rule 404(b) evidence must be relevant, survive a Rule 403 balancing test, and be probative of something other than the defendant's criminal propensity, the only "practical difference" is whether the defendant is entitled to Rule 404(b)'s procedural protections, i.e., notice by the prosecution and a limiting instruction by the court. Green, 617 F.3d at 247-48 (citing Bowie, 282 F.3d at 927).

Evidence of prior bad acts may be admitted for a reason not specifically listed in Rule 404(b), "so long as it is used for a purpose other than proving a defendant's likelihood to have committed this particular crime based on an inference drawn from evidence pertaining to his character." United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994) (citing United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988)).  The purpose of Rule 404(b) is "'simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person.'"  Green, 617 F.3d at 249 (quoting United States v. Taylor, 522 F.3d 731, 735-36 (7th Cir. 2008)).

The Supreme Court set forth a four-part test to determine admissibility of "other acts" evidence under Rule 404(b) in United States v. Huddleston.  The Court should consider whether 1) the evidence is offered for a proper purpose under Rule 404(b); 2) the evidence is relevant under Rule 402; 3) the probative value of the evidence substantially outweighs potential unfair prejudice under Rule 403; and 4) prejudice can be cured by the trial court, at a party's request, providing the jury with a limiting instruction.  Huddleston, 485 U.S. at 691-92; Scarfo, 850 F.2d at 1019 (applying Huddleston in the Third Circuit).

### 1.    Prior Relationship Evidence

The Third Circuit has found evidence of prior similar activities to be admissible to show intent to defraud, motive, or knowledge of the criminal nature of activity, as well as relevant to proving a crime of fraud.  In United States v. Saada, 212 F.3d 210 (3d Cir. 2000), the defendants appealed their conviction of conspiracy to defraud an insurance company, mail fraud, and wire fraud.  The Third Circuit upheld the district court's admission of evidence regarding a prior insurance fraud conspiracy because the evidence "showed his intent to defraud, knowledge of the fraudulent nature of the water damage claim, and financial motive to commit insurance fraud, . . .

8

and the absence of any accident," all of which were proper "non-propensity bases" for admission under Rule 404(b).  Id. at 223-24.  Similarly, in United States v. Jemal, the Third Circuit held that the district court properly admitted evidence of the defendant's past involvement in insurance frauds and "bust-out" schemes.  Jemal, 26 F.3d at 1269.  The Court found that the evidence was probative of the defendant's fraudulent intent his knowledge that his acts were part of a criminal scheme.  Id. at 1272.

Other Courts of Appeals have similarly held in fraud cases that evidence of prior acts is admissible under the Huddleston analysis.  For example, the Seventh Circuit upheld the admission of evidence of an earlier financial scam that was sufficiently similar to the charged illegal bribery scheme, and not unduly prejudicial, because the earlier act supported an inference of criminal intent on the part of the Defendant.  United States v. Montani, 204 F.3d 761, 768 (7th Cir. 2000) (holding that the district court did not abuse its discretion in admitting the Rule 404(b) evidence and affirming the defendant's conviction).  Similarly, the Eleventh Circuit upheld the admission of evidence of the defendant's history of non-compliance with federal grant regulations as probative of his intent to defraud, his knowledge, and his lack of mistake in committing wire fraud.  United States v. Williams, 527 F.3d 1235, 1247 (11th Cir. 2008) (holding that where the district court offered an appropriate limiting instruction, admission of non-propensity evidence was not plain error).

Additionally, with respect to the prejudice prong, the Third Circuit has found that where "the evidence of the prior criminal activity detailed a similar crime against the same victim, . . . the testimony to this effect was not overly prejudicial."  United States v. Butch, 256 F.3d 171, 176 (3d Cir. 2001) (holding no abuse of discretion and affirming conviction where the district

9

court admitted the government's evidence that was probative of the relationship between defendants for the purpose of establishing a conspiracy).  Moreover, any potential undue prejudice was ameliorated by the court's limiting instruction.  Id.  Similarly, in United States v. Traitz, 871 F.2d 368 (3d Cir. 1989), the Court upheld the district court's admission of evidence of uncharged acts of violence that showed "a symbiotic relationship" between the parties,  "the background of the charges, the parties' familiarity with one another,"  and "for the purpose of showing the victim's state of mind."  Id. at 389-90 (citations omitted) (holding that the district judge did not abuse his discretion in admitting non-propensity evidence pursuant to Rule 404(b)).

As mentioned in Section IV. A., evidence of the trust between a defendant and victim of a financial fraud may be relevant to show the opportunity for a defendant to benefit from a fraudulent transaction, or to show the defendant's pattern of crime.  The Seventh Circuit upheld the admission of evidence of a prior fraud scheme that was "intricately related to the charged conduct" of investor fraud and the aiding and abetting of the preparation of false tax returns, because it was probative of the investors' reliance upon the defendant's representation about his past success in gaining prospective investors.  United States v. Polichemi, 219 F.3d 698, 709-10 (7th Cir. 2000).  See also United States v. Scop, 940 F.2d 1004, 1009 (7th Cir. 1991) (affirming admission of evidence regarding "truly similar activities" in a pattern of fraudulent trades, in which the defendant "victimized some of the same investors" and "used identical methods of price manipulation," as being probative of a common pattern of crime).

In this case, although evidence of Defendant's long history of soliciting investments from the victims for fraudulent projects was not intrinsic evidence because it could not "directly prove" Defendant's intent to defraud, a jury could infer from their prior dealings that the

10

Defendant intended to mislead the victims into investing in an Ecuadorian oil scheme that did not actually exist.  The evidence of Defendant's past fraudulent schemes involving the victims may be probative of his knowledge that his activities were fraudulent, his awareness of the illegality of his conduct, and his opportunity to pray on the victims' trust in order to extract hundreds of thousands of dollars, as he allegedly did numerous times before.  Moreover, the evidence could be probative of the defendant's particular pattern of fraudulent investment schemes.

In United States v. Saada, the Third Circuit explained that "often the full context of Rule 404(b) evidence may not be evaluated until all evidence has been presented, following which the jury may be carefully instructed as to the limited way in which the evidence may be considered." Saada, 212 F.3d at 224 n.15.  Here, the Court is asked to rule on the motion before the evidence is presented at trial.  Therefore, the Court will grant the Government's pretrial motion to admit the Rule 404(b) evidence, but will do so without prejudice to Defendant raising objections at trial that were not previously addressed, and without precluding the parties from requesting limiting instructions that the Court should provide to the jury.

### 2.     Financial Condition Evidence

The Third Circuit has cautioned against admitting evidence of the Defendant's financial status, with some exceptions.  In United States ex rel. Mertz v. State of New Jersey, 423 F.2d 537 (3d Cir. 1970), the Third Circuit explained that usually evidence of the defendant's social status or economic condition threatens the equality of the justice system, but in some cases, "the special nature of the crime charged may justify the use of evidence of financial embarrassment in order to show the accused's knowledge and motive, as where one is charged with embezzlement or similar financial misconduct."  Id. at 541.  Additionally, evidence is admissible to show "lack of

11

funds prior to the time of the crime charged . . . if it is joined with proof of the sudden possession

of wealth immediately afterward."  Id.  Other courts agree that where the defendant's financial

distress contributed to the motive for a financial crime, such evidence may be admissible.  See,

e.g., United States v. Metallo, 908 F.2d 795, 798 (11th Cir. 1990) ("Courts have long held that

evidence of financial difficulties is admissible in fraud prosecutions to demonstrate knowledge,

motive, intent, design and absence of mistake."); United States v. Tager, 788 F.2d 349, 353 (6th

Cir. 1986) (upholding the trial court's admission of checks showing defendant's current financial

condition as probative of his fraudulent intent and knowledge that his statements regarding his

financial worth were false); United States v. Reed, 639 F.2d 896 (2d Cir. 1981) (upholding the

trial court's admission of defendant's checks drawn on accounts with insufficient funds as

evidence of knowledge of illegality and intent to defraud in a similar scheme).

   To be relevant, the evidence of the financial motive must be close in time to the charged

crime.  See United States v. Reed, 700 F.2d 638, 643 (11th Cir. 1983) (distinguishing the

evidence in that case regarding the defendant's inability to pay his debts in the past, which was

not admitted, from evidence admitted in other cases showing the defendant faced "an imminent

financial burden" and had to meet his obligations soon or face dire consequences, as probative of

motive); see also United States v. Benjamin, 125 F. App'x 438, 440 (3d Cir. 2005) (non-

precedential) (holding that district court did not abuse its discretion in precluding employee from

cross-examining his supervisor as to personal financial difficulties that may have provided a

financial "motive" for his alleged discovery of defendant's mail fraud, where ten years had

passed between the evidence of the purported "motive" and the indictment of defendant for the

fraud).

Moreover, with respect to financial crimes, evidence of an "'unexplained abrupt change of circumstances is not merely proof of motive, but also amounts to circumstantial evidence of the crime.'"  United States v. Weller, 238 F.3d 1215, 1221 (10th Cir. 2001) (quoting United States v. Mitchell, 172 F.3d 1104, 1109 (9th Cir. 1999)) (upholding admission of evidence of defendant's sudden influx of cash after robbery into a previously empty bank account, where she had no legitimate source of income, as circumstantial evidence that defendant committed the robbery).  Admission of financial evidence may also be relevant to a defendant's alibi.  In United States v. Kemp, 500 F.3d 257 (3d Cir. 2007), the court admitted evidence contradicting the defendant's claims that he had great wealth in a case where the defendant was convicted of crimes including conspiracy to commit honest services fraud.  Id. at 296-97.  The Third Circuit held that the district court properly admitted evidence of the defendant's financial status because the defendant had contended that his wealth weakened his motive to engage in financial fraud, and that the evidence was more probative than prejudicial.  Id. at 297-98.

In United States v. Hawkins, 360 F. Supp. 2d 689, 693 -695 (E.D. Pa. 2005) (Baylson, J.), this Court held that evidence of the defendant's financial troubles in prior commercial transactions with fast food franchisors was admissible, because the jury could infer that the defendant had a motive to enter the alleged conspiracy and wire fraud.  Id. at 695.  The Court concluded that "evidence of an individual's financial condition is admissible when it bears directly, but not collaterally, on transactions that are relevant to the indictment."  Id. (allowing admission of evidence regarding financial dealings that was directly relevant to the fraud charge, and precluding admission of evidence regarding financial status that was collateral to the perjury charge).  In Hawkins, the Court cautioned that "whether any financial details may be introduced

13

will depend on whether they can be presented succinctly and without confusing the jury or prolonging the trial." <u>Id.</u>

Here, the jury could infer from the evidence of Defendant's financial condition–that he was facing imminent foreclosure on his Florida home, that he owed $100,000 in back taxes, and that the IRS had placed a lien on his home–that he had a motive to obtain funds via a fraudulent investment scheme, or that he intended to use the victims money for personal expenses. Moreover, the evidence that the Defendant was unable to pay the back taxes before obtaining the victims' funds, and then paid the taxes after receiving a $350,000 loan from the victims, may be circumstantial evidence of the crime itself, as in <u>Weller</u>.  The financial condition evidence in this case is not collateral to a charge of a non-financial crime, but rather is directly relevant to the wire fraud charge.  Therefore, the Court will allow the government to introduce evidence of Defendant's financial status during the period in which the alleged fraud occurred.  The Court cautions that it will not allow the Government to admit any evidence pertaining to the Defendant's financial difficulties that is confusing to the jury, unnecessarily lengthens the trial, or is collateral to the case.

## V.    Conclusion

Because the evidence that the Government moves to admit may be probative of one or more non-propensity purposes under Rule 404(b), including intent, knowledge, motive, and opportunity, the Court will grant the Government's Motion <u>in Limine</u>.  An appropriate Order follows.

A:\10-37.memo.wpd